**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**TRENTON DAVID FICKLE,**<br><br>Defendant. | **Case No. 26-05003-01-CR-SW-MBB** |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri ("the Government") and Trenton David Fickle ("the defendant"), represented by Erica Mynarich. The defendant understands and agrees that this plea agreement is only between the defendant and the Government and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified.

2. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the indictment that charges the defendant with violating 18 U.S.C. § 933(a)(3), that is, conspiracy to traffick firearms. The defendant agrees to plead guilty to Count 4 of the indictment that charges the defendant with violating 18 U.S.C. § 922(g)(3), that is, possession of a firearm by an unlawful user of a controlled substance. The defendant also agrees to forfeit to the Government the property described in the Forfeiture Allegation of the indictment. By entering into this plea agreement, the defendant admits to committing these offenses and to being guilty of these offenses.

**3. Statutory Penalties.** The defendant understands Count 1 of the indictment carries the following maximum penalties: not more than 15 years' imprisonment, not more than 3 years' supervised release, a fine of not more than $250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

The defendant understands Count 4 of the indictment carries the following maximum penalties: not more than 15 years' imprisonment, not more than 3 years' supervised release, a fine of not more than $250,000, and a $100 mandatory special assessment that must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

**4. Factual Basis for Guilty Plea.** The parties stipulate that the following facts are true and establish both a factual basis for the defendant's guilty plea and the defendant's guilt beyond a reasonable doubt:

In April 2025, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") became aware of Trenton FICKLE ("FICKLE") being involved in behavior consistent with firearms trafficking. Specifically, an ATF Special Agent ("SA") was made aware of several firearm traces and multiple sale reports involving FICKLE and his girlfriend, M.K.

Beginning in April 2025, the investigation SA monitored Armlist.com[1] for firearms listed for sale by FICKLE. FICKLE utilized an email address for his account, Trenton.fickle02@gmail.com. Between April 16, 2025, and September 1, 2025, FICKLE listed approximately 22 firearms for sale on Armslist.com.

In addition to selling firearms on Armslist.com, FICKLE was known to sell firearms on Facebook. Specifically, FICKLE posts photos of firearms and firearm accessories on two Facebook Groups: "417 tactical discussion" and "Joplin Arms Forum." Based on his review of the Facebook Groups, when using Facebook to post, FICKLE used a Facebook profile with the user ID 100003646919225 and username "Trenton Fickle." The SA recognized this as FICKLE's Facebook profile because of his username and the profile picture is a photograph of FICKLE and M.K. It appeared the rules of conduct in these groups are to list a photo of an item (firearm in this case) for sale. If individuals want to inquire about the firearm for sale, they contact the seller

[1] According to Armslist, Armslist.com is an online marketplace at the Armstlist online marketplace for the sale of guns, ammunition, optics, magazines and certain other products and accessories.

(poster) in the comments most often stating, "PM sent." Between June 1, 2025, and September 2, 2025, FICKLE listed approximately 20 firearms for sale on the two Facebook groups.

On April 16, 2025, an ATF undercover officer ("UC") sent an email to Trenton.fickle02@gmail.com inquiring about a Shadow Systems pistol that was posted for sale on Armslist.com. The UC provided a phone number where the UC could be reached. The same day, the UC received a text message from (417) 743-6075 to discuss selling the Shadow Systems pistol. During that conversation, the user of (417) 743-6075 identified himself as "Trenton." The following day, the UC texted with "Trenton," who indicated that the Shadow Systems pistol was no longer available, but that he had a Glock frame, a Glock slide, a Taurus pistol, and a Maverick 88 shotgun available for sale.

On May 21, 2025, the ATF UC met FICKLE the Wal-Mart, located at 2705 Grand Avenue, Jasper County, Carthage, Missouri, also within the Western District of Missouri, to purchase firearms from FICKLE. Prior to the sale, law enforcement conducted surveillance and observed FICKLE leave his residence, 1245 Prospect, Carthage, Jasper County, Western District of Missouri, carrying a black pistol case. Surveillance units continued to follow FICKLE from his residence and he traveled directly to Wal-Mart. FICKLE was operating a 2012 Dodge Charger, bearing a Missorui license plate ending in Y4P. At Wal-Mart, FICKLE exited the vehicle and presented a black pistol case to the UC. The case contained a Glock, Model 47 (frame/receiver), aftermarket Glock style slide, 9mm pistol, bearing serial number BZXL489 equipped with a high-capacity magazine, and a Taurus, G3, 9mm pistol, bearing serial number AGM632747. FICKLE proceeded to sell/transfer the firearm to the UC. During the encounter, the UC smelled an odor consistent with marijuana about FICKLE's person.

FICKLE indicated that he was active in Facebook groups where he was involved in the trading of firearms. He stated that when he has a "higher end" firearm, he typically lists it on Armslist.com.

The UC agreed to purchase the two pistols from FICKLE. As they began counting money, the UC told FICKLE that they did not want their name associated with the purchase or documented, and FICKLE advised it would not be. The UC presented themselves as a convicted felon and advised that they had been previously arrested for tampering with a motor vehicle and domestic assault. The UC advised that they had pled guilty to a tampering charge saying, "My attorney talked me into pleading to a felony tampering . . . I can't go to a store and buy a gun." FICKLE responded, "Works for me . . . sounds good." After the exchange of money, the UC took control of the pistols. Surveillance units then observed FICKLE return to his residence.

The firearms purchased from FICKLE on May 21, 2025, were identified as a (1) Glock, model 47 (frame and receiver) with an aftermarket slide, bearing serial number BZXL489, and (2) a Taurus, G3, 9mm pistol, baring serial number AGM632747.

On May 21, 2025, the ATF SA test fired the Glock pistol and Taurus pistol purchased on May 21, 2025, by the UC and determined both pistols functioned as designed and were firearms as defined by the Gun Control Act of 1968. On December 12, 2025, and ATF SA and Interstate Nexus Expert, was provided with photographs and a description of the Glock pistol bearing serial number BZXL489, and the Taurus pistol bearing serial number AGM632747 that was purchased by the

UC on May 21, 2025. According to the Nexus Expert, it was his opinion that, if the firearms were received and/or possessed in the state of Missouri, they had traveled in or affected interstate and/or foreign commerce.

Regarding FICKLE's past drug use, on April 17, 2025, the Carthage Police Department ("CPD") contacted FICKLE as result of a traffic stop for speeding. M.K. was operating the vehicle, and FICKLE was present in the front passenger seat. While speaking with M.K. at the driver's window, an odor of both fresh and burnt marijuana was emitting from the vehicle. Both M.K. and FICKLE indicated they last used marijuana the previous night. Additionally, there was a sealed container of marijuana purchased from a local dispensary. On October 30, 2020, FICKLE was contacted by Joplin Police Department as result of a traffic stop. During the traffic stop, a strong odor of marijuana was emitting from the vehicle. A search of the vehicle was conducted and officers recovered marijuana and drug paraphernalia.

Between June 6, 2025, and June 10, 2025, an ATF UC communicated with FICKLE at (417) 743-6075 to arrange a purchase of firearms that the UC had seen were listed for sale by FICKLE on Armslist.com.

On June 10, 2025, the UC met with FICKLE at the Flying J Truck Stop, 11570 State Highway FF, Joplin, Missouri, also within the Western District of Missouri. The UC purchased the following firearms from FICKLE for a total of $1,300: (1) a Spike's Tactical, ST15, multi-caliber rifle, bearing serial number VK011256; and (2) a Walther, PDT F-Series, 9mm caliber pistol, bearing serial number 15185GA. FICKLE indicated that he had acquired the Walther through a "trade." On June 11, 2025, the investigation SA test-fired the Spike's Tactical rifle and the Walther pistol purchased by the UC from FICKLE on June 10, 2025, and determined both firearms functioned as designed and were firearms as defined by the Gun Control Act of 1968. The ATF Nexus Expert was provided with photographs and a description of the Spike's Tactical rifle bearing serial number VK011256, and the Walther pistol bearing serial number 15185GA. According to the Nexus Expert, it was his opinion that, if the firearms were received and/or possessed in the state of Missouri, they had traveled in or affected interstate and/or foreign commerce.

On July 23, 2025, the SA obtained a federal search warrant (25-SW-2120-DPR) to obtain the content associated with Trenton FICKLE's Facebook. On August 3, 2025, Facebook returned the warrant with the data requested.

A review of the contents revealed communication, via Facebook Messenger, between FICKLE and others in which FICKLE was arranging the sale of firearms and firearm parts including machinegun conversion devices ("MCD") and suppressors, and narcotics, that occurred between January 2023 and November 2023. Specifically, he communicated with at least eight individuals regarding the sales of MCDs. In one conversation that occurred on July 20, 2023, FICKLE appeared to be willing to sell a firearm to an individual despite that individual describing himself as a "5 time felon[.]"

On August 27, 2025, an ATF UC, using the Telegram application, arranged to purchase a Sig Sauer, P320 Flux Raider, 9mm pistol bearing serial number 58J658446, from FICKLE. The communicating UC told FICKLE that he was sending another individual (a separate ATF UC) to

conduct the purchase because the communicating UC was unavailable. The purchase occurred at the same Wal-Mart in Carthage, Missouri, on August 27, 2025. Prior to the sale, investigators observed FICKLE exit his residence carrying a black square firearm case. Officers maintained visual contact of FICKLE until he arrived at Wal-Mart to meet the UC. FICKLE removed the firearm from a black square firearm, consistent with the case that he exited the residence with and sold the firearm to an ATF UC. The firearm was identified as a Sig Sauer, P230, pistol bearing serial number 58J658446.

The ATF Nexus Expert was provided with photographs and a description of the Sig Sauer, P320 Flux Raider, 9mm pistol bearing serial number 58J658446. According to the Nexus Expert, it was his opinion that, if the firearm was received and/or possessed in the state of Missouri, it therefore had traveled in or affected interstate and/or foreign commerce. Additionally, on August 27, 2025, the SA test-fired the pistol and found that it functioned as designed and is considered a firearm as defined by the Gun Control Act of 1968.

Between February 12, 2024, and September 2, 2025, FICKLE himself purchased at least twenty-two (22) firearms from various federal firearm licensees ("FFL"), on twenty (20) separate occasions.

On September 10, 2025, ATF executed a federal search warrant (25-SW-2137-DPR) on FICKLE's residence, located in Jasper County, Western District of Missouri. At 9:30 a.m., prior to the execution of the search warrant, CPD contacted FICKLE during a traffic stop in the parking lot of Liberty Tree Guns, 530 West Fir Road, Carthage, Missouri. The SA contacted FICKLE during that traffic stop and provided him with a copy of the search warrant. At that time, FICKLE provided his cellular phone to the SA and gave consent for the phone to be searched.

During the traffic stop, FICKLE advised officers there were firearms present in the vehicle. FICKLE had a Glock, 19GEN5, pistol, bearing serial number BNEG908 on his person. FICKLE consented to a search of his vehicle. Officers located a Griffin Armament, MK2, pistol bearing serial number MK2-07503, ammunition, and a black case containing two shotgun chokes in FICKLE's vehicle.

The SA interviewed FICKLE on scene. FICKLE was asked about his marijuana use and FICKLE stated he had smoked marijuana "early this morning." He stated that smoking marijuana in the morning was a normal routine, and he had smoked marijuana his "whole life." He stated that there was probably a half ounce of marijuana in his house.

FICKLE acknowledged that he knew marijuana was illegal under federal law. When discussing the ATF Form 4473 warning that a person who was an unlawful user of or addicted to marijuana could not possess a firearm, FICKLE claimed that he thought it only applied to those who were addicted to marijuana and that he did not "stay high all the time."

FICKLE said that he dealt mostly in cash during the firearm sales, but that he also used M.K.'s CashApp for some of the transactions.

FICKLE stated that M.K. straw purchased "several" firearms for FICKLE, probably from Razor's Edge in Joplin, Missouri. He would tell M.K. what firearms to purchase and she would enter the store and purchase those firearms for FICKLE. FICKLE said, "she didn't really realize what she as doing."

While this interview was taking place, other investigators with ATF conducted a search of FICKLE's residence

In the bedroom that appeared to belong to FICKLE and M.K., officers located the following:

1. Miscellaneous receipts in a dresser drawer, the closet, toolbox, and a shelf;
2. A Glock, 43X, 9mm pistol bearing serial number AKMV885 with two loaded magazines in a gun cabinet;
3. A SCT, model 17, 9mm caliber pistol, bearing serial number AAB0011093 equipped with a loaded thirty-round magazine on a shelf;
4. Approximately 90 grams (field weight) of marijuana, including packaging, found on a shelf;
5. Ammunition in a black field box and a green field box;
6. A suspected firearm silencer found in a toolbox;
7. An Anderson Manufacturing, AM-15, 7.62 caliber pistol, bearing serial number 23027866, and a magazine; and
8. A "Super Safety" firearm component and a suspected M-16 rifle full-auto hammer.

In a bedroom, identified as belonging to FICKLE's mother, ATF located:

1. A Taurus, G2C, 9mm pistol bearing serial number AEK751890 with two loaded magazines located next to the bed;
2. Suspected marijuana next to a bedside table; and
3. Bulk ammunition.

On September 11, 2025, the investigating SA test fired all six firearms seized from FICKLE, FICKLE's vehicle, and FICKLE's house during the September 10, 2025, operation. He found that all of the firearms functioned as designed and were considered firearm under the Gun Control Act of 1968. On December 12, 2025, the Nexus Expert was provided photographs of the firearms seized during the execution of the search warrant. According to the Nexus Expert, it was his opinion that, if the firearm was received and/or possessed in the state of Missouri, it therefore had traveled in or affected interstate and/or foreign commerce.

In November 2025, the SA reviewed FICKLE's photo data. The phone contained numerous images of firearms, firearm components, and apparent marijuana. The SA also found messages from February 1, 2025, between FICKLE and "Mom," in which "Mom" was asking FICKLE, "Do you have a couple grams for sale or an eighth?" FICKLE responded, "Yeah I got a little bit."

FICKLE texted with a contact identified as "Jermey." On December 14, 2024, FICKLE sent a text message to "Jermey" that said, "What's up bro, It's Trent, I got a new number. Was gonna see if I

can slide thru and grab that tomorrow. I also got some new bud. I'll send a pic when I get home in a few." FICKLE then sent a video depicting a baggie containing apparent marijuana. On January 17, 2025, FICKLE sent a text message to "Jermey" that read, "What's up bro my bad been crazy busy. Got some gas if need any. Jus let me know." The SA knew that FICKLE often referred to marijuana as "gas." FICKLE and "Jermey" also discussed marijuana transactions in February 2025.

On December 10, 2025, the SA reviewed financial records from Block Incorporated which detailed the CashApp transactions for M.K. for the time period between January 3, 2023, and January 29, 2025. During this time period, FICKLE was communicating with various individuals regarding narcotics and firearm transactions.

On January 9, 2025, M.K.'s CashApp received a payment of $850 from Edward Ibarra. The SA found corresponding Facebook messages that began on December 19, 2024, through January 9, 2025. The messages began with Ibarra asking about the price of an "AK." Later, Ibarra sent a message that said, "Make me something bro . . . Or some 1911 . . . Guns w suppressors." FICKLE later responded he was no longer involved with suppressors but Ibarra continued to press for FICKLE to find one. On December 22, 2024, IBARRA sent a message that said, "Full size…And try as hard as you can find a suppressor bro…I got you." FICKLE responded, "I'll see what's up bro. Ill ask some ppl but no promises on1 those and idek what the price ill be if I do fin 1 but Ill lyk whats up. Ik I can fs find a fullsize ak tho." On January 7, 2025, FICKLE sent Ibarra images of two AR-style rifles and a pistol. One of the rifles was identified as a Matrix Aerospace, MS556-SC, multi-caliber rifle, bearing serial number SC556-14906. The pistol was identified as a Springfield Armory, XD-40, .40 caliber pistol, bearing serial number MG257126. Ibarra said he was interested in those firearms.

The continued messages demonstrated that Ibarra and FICKLE met in the Northpark Mall, 101 South Rangeline Road, Joplin, Jasper County, Western District of Missouri. Some of the messages appeared to be sent real time and coincided with Ibarra sending M.K.'s Cashapp account $850. When Ibarra let FICKLE know he had arrived at the parking lot, Ibarra sent an image from inside the vehicle depicting the parking lot. The image also depicted a document in the vehicle's visor showing part of an address that read, "623 W/ J. . ." Ibarra's known address was 623 East Junge Boulevard, Joplin, Missouri. A criminal history check of Ibarra showed that he was a convicted felon.

The SA reviewed Form 4473s from Liberty Tree Guns, a FFL, which reflected that between February 14, 2024 and October 28, 2024, FICKLE purchased six firearms from that FFL.

The SA reviewed Form 4473s from Rayzor's Edge Tactical, a FFL. Those records reflected that between March 2024, and December 2024, FICKLE purchased six firearms from that FFL.

The SA reviewed Form 4473 from Joplin Centerfire, a FFL. Those records reflected that between March 2024 and May 2025, FICKLE purchased eleven firearms from that FFL. Specifically, on May 30, 2025, FICKLE purchased a Spike's Tactical, ST15, multi-caliber receiver, bearing serial number VK011256. This firearm was completed and sold to the UC eleven days later on June 10, 2025.

In each of the Form 4473s FICKLE was asked in Question 21.a., "Are you the actual transferee/buyer of all of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring any of the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you.**" FICKLE answered, "No." Question 21.f asked, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning**: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." FICKLE answered, "No." Right above where FICKLE signed his name and provided the certification date, Form 4473 read, **"I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 21.b. through 21.l. as well as 21.n. is prohibited from receiving, possessing, or purchasing a firearm. I understand that a person who answers "yes" to question 21.m.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 21.m.2. and provides the documentation required in 26.d. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale to predominantly earn a profit without a Federal firearms license is a violation of Federal law.**"

FICKLE admits that between January 3, 2023, and continuing through September 10, 2025, said dates being approximate, in Jasper County, in the Western District of Missouri and elsewhere, that he did knowingly conspire and agree with persons known and unknown to ship, transport, transfer, cause to be transported or otherwise dispose of one or more firearms, to another person, in an affecting interstate and foreign commerce, knowing or having reasonable cause to believe that the use, carrying, and possession of a firearm by a recipient would constitute a felony. Further, FICKLE admits that, between January 3, 2023, and September 10, 2025, in Jasper County, Western District of Missouri, he knowingly possessed firearms knowing that he was an unlawful user of a controlled substance.

**5. Use of Factual Admissions and Relevant Conduct.** The defendant understands and agrees that the facts contained in ¶ 4 and other portions of this plea agreement, as well as admissions the defendant makes during the change of plea hearing, will be used to determine the defendant's guilt and the defendant's advisory sentencing range under the United States Sentencing Guidelines. The defendant likewise understands and agrees that the conduct charged

in any dismissed counts of the indictment and all other uncharged related criminal activity may be considered as "relevant conduct" for purposes of calculating the defendant's advisory sentencing range under the Guidelines.

The defendant further understands that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 ordinarily limit the admissibility of statements made by a defendant during plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under those rules and agrees that any such statements, as well as the facts contained in ¶ 4 and other portions of this plea agreement, may be used against the defendant at any time and in any proceeding should the defendant withdraw from this plea agreement.

**6. Sentencing Procedures.** The defendant understands that in determining the appropriate sentence, the Court may impose any sentence authorized by law. While the Court must consider the United States Sentencing Guidelines, the Guidelines are advisory and do not bind the Court. The Court will determine the defendant's advisory sentencing range under the Guidelines at sentencing, but the Court may impose a sentence either above or below that range, so long as that sentence is reasonable.

The defendant further understands that the Court will find facts by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the defendant's advisory sentencing range under the Guidelines. The defendant waives any right to a jury finding beyond a reasonable doubt of all facts used to determine the sentence imposed and waives any right to have those facts alleged in an indictment. The defendant also understands that in finding the facts relevant to the imposition of the defendant's sentence, the Court may consider any reliable information, including hearsay, and that the Court will not be bound by any

recommendation regarding the application of the Guidelines or the sentence to be imposed made by the United States Probation Office or the parties.

The defendant likewise understands that any term of imprisonment the Court may impose will not allow for parole and that in addition to a term of imprisonment the Court may impose a term of supervised release. The defendant further understands that a violation of a condition of supervised release could result in the Court imposing an additional term of imprisonment as well as an additional term of supervised release to follow, both subject to the statutory maximums set forth in 18 U.S.C. § 3583.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the Government agrees not to pursue any additional charges against the defendant for any federal criminal offenses related to firearm trafficking and possession of a firearm by an unlawful user of a controlled substance for which it has venue and that arose out of the defendant's conduct described above. Additionally, the Government agrees to dismiss Count 2 (firearm trafficking), Count 3 (firearm trafficking), Count 5 (false statement during the purchase of a firearm), Count 6 (false statement during the purchase of a firearm), Count 7 (false statement during the purchase of a firearm), and Count 8 (false statement during the purchase of a firearm) at sentencing.

The defendant understands that this plea agreement does not foreclose any prosecution for murder or attempted murder; physical or sexual violence; aiding and abetting, attempting, soliciting, or conspiracy to commit murder or physical or sexual violence; and any criminal activity currently unknown to the Government.

8. **Preparation of Presentence Report.** The defendant understands and agrees the Government will provide the Court and the United States Probation Office a version of the offense conduct. This may include information concerning the background, character, and conduct of the

defendant, including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which the defendant will plead guilty. The Government may respond to comments made or positions taken by the defendant or the defendant's counsel and may correct any misstatements or inaccuracies.

9. **Withdrawal of Plea.** Except for change of plea hearings before a United States Magistrate Judge, either party reserves the right to withdraw from this plea agreement at any time prior to the United States District Judge formally accepting the defendant's pleas of guilty. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible.

If the defendant waives the right to plead guilty before a District Judge and consents to plead guilty before a United States Magistrate Judge, then the parties' rights to withdraw from this plea agreement for any reason terminate upon the Magistrate Judge's completion of the change of plea hearing with a recommendation that the guilty pleas be accepted.

After the District Judge accepts the defendant's guilty pleas, or the Magistrate Judge completes the change of plea hearing, the defendant may withdraw the pleas only if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts the pleas, the defendant may not withdraw the pleas solely because of the nature or length of the sentence imposed, including if the Court imposes a sentence that is outside the defendant's advisory sentencing range under the United States Sentencing Guidelines or a sentence that the defendant does not expect, like, or agree with.

10. **Agreed Guidelines Applications.** With respect to the application of the United States Sentencing Guidelines to this case, the parties stipulate and agree as follows:

a. The applicable Guidelines section for the offense of conviction is U.S.S.G. § 2K2.1.

b. The parties have not reached an agreement regarding the defendant's enhancements. The parties agree that the Court will determine the defendant's applicable enhancements after receipt of the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that determination.

c. The defendant has admitted guilt and clearly accepted responsibility for the defendant's actions, entitling the defendant to a two-level reduction pursuant to U.S.S.G. § 3E1.1(a). In addition, the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Consequently, if the Court finds the defendant's total offense level to be 16 or higher, the defendant is entitled to an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b). This plea agreement constitutes the Government's written motion with the Court for that reduction. This motion will be withdrawn, and the Government will be free to withdraw its recommendation that the defendant receive any reduction for acceptance if, after entering into this plea agreement, the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and the defendant's pretrial release, (2) attempts to withdraw the defendant's guilty pleas, (3) violates the law, or (4) otherwise engages in conduct inconsistent with the defendant's acceptance of responsibility as described in U.S.S.G. § 3E1.1 and its commentary.

d. The parties have not reached an agreement regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence report prepared by the United States Probation Office. The parties reserve the right to contest that determination.

e. The defendant understands that the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable." However, while the United States does not agree that a sentence outside the Guidelines range is appropriate, the defendant may argue for a sentence outside the Guidelines range. The agreement by the Government not to seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office, and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not "unreasonable."

f. The parties acknowledge and agree that there are no agreements between the parties with respect to any Guidelines issues other than those specifically listed in this paragraph, including its subparagraphs. As to any other Guidelines issues, the parties are free to advocate their respective positions before the Court.

11. **Financial Disclosures.** The defendant will fully and truthfully disclose all assets and property in which the defendant has any interest or over which the defendant exercises direct or indirect control, including assets and property held by a spouse, nominee, or other third party. These disclosure obligations are ongoing and in force from the execution of this agreement until all financial obligations arising from the defendant's guilty plea—including any forfeiture judgment, restitution order, fine, or assessment—are satisfied in full. The defendant likewise agrees to assist the Government in identifying, locating, returning, and transferring assets for use in payment of restitution, forfeiture, fines, or assessments ordered by the Court.

Within 10 days of signing this plea agreement, the defendant will execute and provide the Government (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submitted to the United States Probation Office. The defendant likewise authorizes the Government to obtain the defendant's credit report. If requested by the Government, the defendant agrees to submit to one or more sworn interviews or depositions regarding the defendant's assets. The defendant understands that the Government will consider compliance with these disclosure obligations when making a recommendation to the Court regarding the defendant's acceptance of responsibility.

12. **Forfeiture.** The defendant agrees that the Government may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest and that the defendant will not contest any such proceedings. The defendant likewise agrees to forfeit to the Government all interests in any asset the defendant owns, or over which the defendant exercises direct or indirect control, that is subject to forfeiture either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set

forth in 21 U.S.C. § 853(p). The property the defendant forfeits includes, but is not limited to, the following:

a. A Glock pistol, bearing serial number BNEG908;

b. A Griffin Armament, pistol bearing serial number MK207503;

c. A Glock pistol, bearing serial number AKMV885,

d. A SCT pistol, bearing serial number AAB0011093;

e. An Anderson Manufacturing pistol, bearing serial number 23027866;

f. A Taurus pistol bearing serial number AEK751890;

g. A firearm silencer;

h. Approximately 867 rounds of assorted ammunition; and

i. Approximately 83 rounds of assorted ammunition; and

j. Approximately 30 rounds of assorted ammunition.

With respect to every asset that the defendant agrees to forfeit, the defendant waives all constitutional and statutory challenges—including through direct appeal, habeas corpus, or any other means—to any forfeiture carried out in accordance with this plea agreement, including on the grounds that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

The defendant states that the defendant is the sole and rightful owner of the above-listed property and that to the best of the defendant's knowledge no one else has any ownership or other interest in that property. In the event any federal, state, or local law enforcement agency having custody of the property decides not to pursue its forfeiture, the defendant abandons any interest in that property and consents to the destruction or any other disposition of that property by the federal,

state, or local agency without further notice or obligation whatsoever owing to the defendant.

The defendant agrees to take all necessary steps to comply with these forfeiture matters before sentencing.

13. **Government's Reservation of Rights.** The Government reserves the right to comment on the evidence supporting the offense conduct in this case and the right to oppose any position advanced by the defendant at sentencing that might be inconsistent with this plea agreement. The Government also reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The Government further reserves the right to oppose, when consistent with this plea agreement, any arguments the defendant might advance on direct appeal or in post-conviction proceedings. In particular, the Government remains free to defend the legality and propriety of the defendant's sentence on appeal or collateral attack, even if the Court chooses not to follow any recommendation made by the Government.

14. **Waiver of Constitutional Rights.** The defendant understands that a guilty plea is a complete and final admission of guilt, that by pleading guilty the defendant waives certain constitutional rights, and that the Court will adjudge the defendant guilty without a trial. In particular, the defendant acknowledges being advised of, understanding, and knowingly and voluntarily waiving (1) the right to plead not guilty and to persist in a plea of not guilty; (2) the right to be presumed innocent until the defendant's guilt has been established beyond a reasonable doubt at trial; (3) the right to a jury trial; (4) the right to be represented by, and receive the effective assistance of, counsel—and if necessary, have the Court appoint counsel—at trial and at every stage of the proceeding; (5) the right to confront and cross-examine adverse witnesses at trial; (6)

the right to be protected from compelled self-incrimination; and (7) the rights to testify, to present evidence, and to compel or subpoena a witness to appear on the defendant's behalf at trial.

15. **Loss of Rights.** The defendant understands that by pleading guilty to a felony offense the defendant will lose the right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury. The defendant further understands that during the change of plea hearing, the Court may ask the defendant questions about the offenses underlying the defendant's guilty pleas, and if the defendant answers those questions under oath and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making a false statement.

16. **Waiver of Pre-Trial Motions.** The defendant understands the right to file certain pre-trial motions and knowingly and voluntarily withdraws any pending motions, waives the right to have any pending motions resolved, and waives the right to file any additional pre-trial motions in this case. This waiver includes, but is not limited to, any motions based on the statute of limitations, the Speedy Trial Act, or any grounds enumerated in Federal Rule of Criminal Procedure 12(b)(3).

17. **Waiver of Appellate and Post-Conviction Rights.** The defendant understands and acknowledges the right to directly appeal the conviction or sentence in this case and any right to challenge the conviction or sentence collaterally through post-conviction proceedings, including through proceedings under 28 U.S.C. § 2255, 28 U.S.C. § 2241, and *corum nobis*. In exchange for the concessions made by the Government in this plea agreement, the defendant knowingly and voluntarily waives all rights to directly appeal or collaterally attack the conviction or sentence on any non-jurisdictional ground except (1) ineffective assistance of counsel, (2) prosecutorial

misconduct, or (3) a sentence greater than the statutory maximum. These are the only non-jurisdictional grounds for direct appeal or collateral attack not waived by this plea agreement.

The grounds for direct appeal or collateral attack that are waived include, but are not limited to, the following: sentencing errors such as a misapplication of the United States Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence; any restitution or forfeiture order; any challenge to the constitutionality of the statute or statutes to which the defendant is pleading guilty or under which the defendant is sentenced; any argument that the defendant's admitted conduct does not fall within the scope of the statute or statutes to which the defendant is pleading guilty; any argument that the defendant's plea was not voluntary; and any argument that the defendant's constitutional rights were violated, other than due to ineffective assistance of counsel or prosecutorial misconduct.

If, however, the Government exercises its right to appeal the sentence imposed under 18 U.S.C. § 3742(b), the defendant is released in part from this waiver and may cross-appeal the sentence imposed as allowed under18 U.S.C. § 3742(a) with respect to any issues that have not been agreed upon in this agreement.

The defendant acknowledges discussing this appeal waiver with counsel and understanding its terms. The defendant waives any explanation of the terms of this waiver under Federal Rule of Criminal Procedure 11(b)(1)(N).

**18. Waiver of FOIA Request.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974.

**19. Defendant's Breach of Plea Agreement.** If the Court determines the defendant committed any crime or violated any condition of release between the signing of this agreement

and the date of sentencing; failed to appear for sentencing; provided intentionally misleading, incomplete, or untruthful information to the Government, the United States Probation Office or the Court; or otherwise breached any term of this plea agreement, the Government will be released from its obligations under this agreement and will retain the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant, however, will remain bound by the terms of this agreement, and will not be allowed to withdraw the guilty pleas entered pursuant to this agreement. The defendant likewise will waive the right to challenge the initiation of the dismissed or additional charges following a finding of breach, including by asserting a statute of limitations defense.

**20. Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice, and approval of counsel. The defendant acknowledges being satisfied with the assistance of counsel and that counsel has fully advised the defendant of the rights and obligations arising from this agreement. The defendant further acknowledges that no threats or promises, other than the terms and conditions of this agreement, have been made by the Government, the Court, the defendant's counsel, or any other person to induce the defendant to enter a plea of guilty.

**21.** **No Undisclosed Terms.** The parties agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties and that any purported term or condition not expressly set forth in this agreement, or an in camera supplement, is not enforceable.

**R. MATTHEW PRICE**
United States Attorney

Dated: 6·17·2026

**STEPHANIE L. WAN**
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the United States Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 6/17/26

**TRENTON DAVID FICKLE**
Defendant

I am defendant Trenton David Fickle's attorney. I have fully explained to my client his rights with respect to the offenses charged in the indictment. Further, I have reviewed with my client the provisions of the United States Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with my client. To my knowledge, Trenton David Fickle's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 6/17/26

**ERICA MYNARICH**
Attorney for Defendant