**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHWESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**TRENTON DAVID FICKLE,**<br><br>Defendant. | **Case No. 26-05003-01-CR-SW-MBB** |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through R. Matthew Price, United States Attorney for the Western District of Missouri, and undersigned counsel respectfully submits this sentencing memorandum for a sentencing hearing on November 4, 2026. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the Government respectfully recommends that this Court sentence the defendant to 45 months' imprisonment on Count 1, 45 months' imprisonment on Count 2, said sentences to run concurrently for a total sentence of 45 months, followed by a three-year term of supervised release. The Government also requests that this Court enter a final order of forfeiture. This is a joint recommendation between the parties.

## I. BACKGROUND

On June 17, 2026, the defendant pleaded guilty, pursuant to a plea agreement, to one count of conspiracy to traffick firearms, in violation of 18 U.S.C. § 933(a)(3), and one count of possession of a firearm by an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). (D.E. 28, 30, PSR ¶¶ 1 – 2). On September 28, 2026, the final Presentence Investigation Report ("PSR") was filed. (D.E. 32). On October 20, 2026, the defendant filed his

sentencing memorandum recommending a total sentence of 45 months' imprisonment on Count 1 and 4, said sentences to run concurrently. (D.E. 35).

## II. <u>LEGAL STANDARD</u>

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005)*,* "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007); (citing *Rita v. United States*, 551 U.S. 338 (2007)). 18 U.S.C. § 3553(a) specifies the factors courts are to consider when imposing a sentence. 18 U.S.C. § 3553(a) instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" identified in § 3553(a)(2), "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). The four identified purposes of sentencing are reached by considering the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, pertinent policy statements, unwarranted sentence disparities among similarly situated defendants, the need to provide restitution to the victims of the offense, and the Sentencing Guidelines. 18 U.S.C. § 3553(a)(1)-(7).

Once a correctly calculated Guidelines range is determined, the Court should afford both parties an opportunity to argue "for whatever sentence they deem appropriate," and "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 49). In making this determination, the district court should not presume the Guidelines are reasonable but assess each case upon the facts presented. *Id*. (citing *Gall*, 552 U.S. at 49). "If the court concludes that a sentence outside of the Guidelines range is warranted, then it must 'consider

the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id*. (quoting *Gall*, 552 U.S. at 49).

## III. <u>DISCUSSION</u>

### A. <u>Statutory and Guidelines Calculations</u>

#### *1. Statutory and PSR Calculations*

The final PSR specifies a Guidelines range of 57 months to 71 months' imprisonment, based on a total offense level of 25, and a criminal history category of I. (PSR ¶ 68). The Government concurs with these calculations.

### B. <u>Statutory Sentencing Factors</u>

#### *1. Nature and Circumstances of the Offense*

Between January 3, 2023, and September 10, 2025, the defendant purchased 44 firearms from various federal firearms licensees ("FFL") and promptly sold most, if not all, of those firearms, mainly using social media and Armslist.com to facilitate these sales. Many of those firearms were sold to people who were prohibited from possessing firearms or were recovered in connection with criminal activity. (PSR ¶¶ 6, 8, 10, 12, 13, 24). Specifically:

- On or about February 10, 2025, the Springfield, Missouri, Police Department ("SPD") recovered a Glock pistol from Trey Giles and Trejuane Washington. Giles was affiliated with the All Family No Friends criminal street gang. Giles had a documented history with SPD for violent firearm crime and domestic violence. On May 12, 2026, Giles was sentenced to 60 months' imprisonment and 3 years of supervised release for possession of a machinegun by United States District Court Judge Stephen Bough in Case No. 25-

03023-01-CR-S-SRB. The Glock pistol had been purchased by the defendant on December 23, 2024, with a time to crime[1] of 49 days. (PSR ¶ 6).

- On February 13, 2025, Immigration and Customs Enforcement ("ICE") recovered a FNH pistol in El Paso, Texas, in relation to a weapons offense. The defendant purchased the FNH pistol on December 23, 2024, with a time to crime of 52 days. (PSR ¶ 6).
- On April 4, 2024, the Madison, Wisconsin, Police Department conducted a trace of a Glock pistol, after finding an image of the Glock pistol on a murder suspect's phone. The Glock pistol has not been recovered. This Glock pistol was purchased on July 9, 2023, by the defendant's now-wife, M.K., with approximately 270 days between the time the pistol was purchased and the trace. (PSR ¶ 6).
- On October 19, 2023, the Kansas City, Kansas, Police Department recovered a Glock pistol in connection with the arrest of a known fentanyl trafficker. That firearm was purchased by M.K. on May 12, 2023, with a time to crime of 160 days. (PSR ¶ 6).
- On May 21, 2025, the defendant sold an undercover officer ("UC") a Glock pistol with an extended magazine despite the UC informing the defendant that the UC was a convicted felon and could not go to a store and buy a gun. When the UC informed the defendant of this information, the defendant responded, "Works for me . . . sounds good," and assured that the UC's name would not be found on paperwork or documents associated with the sale. (PSR ¶ 8)

[1] "Time to crime" is the period of time between the first retail sale of a firearm by a licensed dealer and the recovery of that firearm by law enforcement at a crime scene, in relation to criminal activity, or from a prohibited person. A short time-to-crime is a key indicator of illegal firearms trafficking, straw purchasing, or a weapon bought specifically to commit a crime.

- On June 10, 2025, the defendant sold the UC a Spike's Tactical rifle and a Walther pistol. The defendant had purchased the Spike's Tactical firearm just 11 days prior from an FFL. (PSR ¶ 8).
- On August 27, 2025, the UC arranged a purchase of a Sig Sauer pistol from the defendant. The defendant then sold the firearm to a separate UC who had been sent to complete the transaction on behalf of the original UC. (PSR ¶ 13).
- Based on financial records for M.K. and social media records for the defendant, in January 2025, the defendant sold an AR-style pistol and an AR-style rifle to Edward Ibarraa, who was a convicted felon. Ibarra was a convicted felon at the time he purchased the firearms from the defendant. On or about August 25, 2026, Ibarra pled guilty to felon in possession of a firearm in the United States District Court for the Western District of Missouri, in Case No. 26-05015-01-CR-SW-MBB. (PSR ¶ 24).

The investigation also revealed that the defendant had been involved in selling machinegun conversion devices ("MCDs"), suppressors, and controlled substances with an individual named Landon Laurance. (PSR ¶ 12). On June 25, 2025, Laurance was sentenced to 36 months' imprisonment for his convictions for possession of a firearm by an unlawful user of a controlled substance and possession or transfer of a machinegun in the United States District Court for the Western District of Missouri, in Case No. 24-05004-01-CR-SW-RK. The defendant's Facebook account revealed that the defendant messaged at least eight people regarding the sales of MCDs and expressed willingness to sell a firearm to an individual who described himself as a "5 time felon." (PSR ¶ 12).

On September 10, 2025, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed a search warrant on the defendant's home. (PSR ¶ 15). The defendant was

contacted during a traffic stop. (PSR ¶ 15). Officers located firearms, ammunition, and firearm accessories in the defendant's vehicle. (PSR ¶ 15).

During an interview with the defendant, he admitted to being a regular user of marijuana and had been using his "whole life." (PSR ¶ 17). The defendant acknowledged that he knew marijuana was illegal under federal law. (PSR ¶ 19). Further, the defendant stated that he had M.K. straw-purchase firearms for him and used her CashApp account to take payments for the firearms sales. (PSR ¶ 19).

When searching his home, the ATF located additional firearms, marijuana, and firearms parts. (PSR ¶ 20). A search of the defendant's phone revealed that, between December 2024 and February 2025, the defendant was selling marijuana. (PSR ¶ 23).

The defendant's behavior, whether as a result of immaturity or recklessness, transferred multiple weapons to individuals who were violent and criminals. While his conduct and his history does not reflect a history of violence, his conduct facilitated and enabled further criminal conduct, including violent criminal conduct. He lied repeatedly on Firearm Transaction Records, claiming that he was not an illegal user of controlled substance and that he was the actual buyer of these firearms. He has a history of engaging sales of narcotics and the sales of dangerous and illegal firearms, like MCDs, to other individuals, including criminals. This conduct is egregious and warrants a significant sentence of imprisonment. However, the Government recognizes that the defendant had, on his own, ceased engaging his worst criminal conduct by the time the ATF executed their search warrant. Based on this conduct, and the defendant's history and characteristics, the Government concurs with the defendant's recommendation for a slight downward variance to 45 months' imprisonment.

*2. History and Characteristics of the Defendant*

In fashioning a "sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), "district courts are not only permitted, but required, to consider the history and characteristics of the defendant." *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007) (internal quotations omitted)).

The Government recognizes that the defendant is young and has a criminal history category of I. (PSR ¶¶ 44 – 46). It is concerning that the defendant was committed to the Missouri Division of Youth Services for an incident where he shot another individual. (PSR ¶ 44). However, the PSR reflects that the victim was uncooperative with the investigation and the defendant claimed that he shot the victim in self-defense. (PSR ¶ 44).

The defendant has had a difficult childhood which includes periods of homelessness and substance abuse. (PSR ¶¶ 53 – 57). He has a significant substance abuse problem, which includes lifetime use of marijuana. (PSR ¶¶ 60 – 61). It is likely that he would benefit from substance abuse treatment. To the defendant's credit, he obtained his High School Equivalence and had been working at Harbor Freight before his arrest. (PSR ¶ 63). His supervisor has indicated that the defendant's job will be available after he is released from incarceration. (PSR ¶ 63).

The defendant's criminal conduct spanned months and enabled other criminals to engage in further criminal activity. However, there is evidence that the defendant was attempting to extricate himself from the criminal element by the time he was arrested. Therefore, the Government recommends a sentence of 45 months' imprisonment.

*3. Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

Based on the defendant's history and the nature of the offenses, a sentence of 45 months' imprisonment reflects the seriousness of the offenses, promotes respect for the law, and provides

punishment that is sufficient, but not greater than necessary. The defendant filled out a Firearm Transaction Record every time he purchased a firearm from an FFL, therefore, he was fully informed of the law, yet he chose to completely disregard those laws. The defendant has demonstrated that he has no respect for the firearms laws of this country. Therefore, a sentence of 45 months would address both the serious nature of his offenses and impress upon him that the law is not optional.

*4. Need to Afford Adequate Deterrence to Criminal Conduct*

A 45-month sentence would provide a specific deterrent to this defendant, as it will sufficiently incapacitate him and mitigate the risk he poses to the community.

In terms of general deterrence, violent crimes committed with firearms is a significant issue in Southwest Missouri. In 2022, the City of Springfield, Missouri, had a record high of 356 shots fired calls resulting in 72 people injured. To combat this tide of violent crime, local and federal law enforcement began working closely to aggressively prosecute those who, like the defendant, are shooters and/or drivers of violent crime. This partnership resulted in an almost 30% decrease in shots fired calls in 2024, with a total of 224 shots fired calls and 33 people injured. In 2025, there was an additional 10% decrease in shots fired calls in the Springfield area. Unfortunately, in the first quarter of 2026, there was a 25% increase in shots fired calls over the same period in 2025. Investigation by the ATF and other law enforcement agencies have revealed that many violent offenders are obtaining their guns through straw purchases and firearm trafficking like the instant offense. A significant sentence in the defendant's case sends a clear message that firearm trafficking is taken seriously in the federal system, and those who arm prohibited and violent offenders will face steep consequences.

*5. Need to Protect the Public from Further Crimes of the Defendant*

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877–78 (7th Cir. 2007)). A total sentence of 45 months would protect the public from future crimes of this defendant. Based upon the defendant's history and characteristics, and the nature of the offense, it is clear that society is in want of protection from this defendant. All of these factors, combined with the nature of the present offenses, make it clear that the defendant is a danger to society, needs to be incarcerated, and needs to be further prohibited from ever carrying a firearm in the future.

## IV. CONCLUSION

Section 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory guideline range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to protect the public from the defendant, the need to avoid unwarranted disparity in sentences, and any other statutory sentencing factors be considered in reaching an appropriate sentence. This sentence is sufficient and not more than necessary, to afford adequate deterrence to criminal conduct and, more importantly, protect the public from future crimes of the defendant. *See* 18 U.S.C. § 3553(a).

As such, the Government respectfully requests this Court impose a sentence of 45 months' imprisonment, to be followed by a three-year term of supervised release, and for the preliminary order of forfeiture be made final.

Respectfully submitted,
R. MATTHEW PRICE
United States Attorney

*/s/ Stephanie L. Wan*
STEPHANIE L. WAN
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417) 831-4406

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Stephanie L. Wan*
STEPHANIE L. WAN